JOHN P. BARRETT *v.* SOUTHERN CONNECTICUT GAS COMPANY ET AL.

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and MACDONALD, Js.

Argued October 6, 1976—decision released February 15, 1977

*Alan Neigher,* for the appellant (plaintiff).

*Donald F. Keefe,* with whom, on the brief, was *Karen S. Nash,* for the appellee (named defendant).

*Ralph C. Dixon,* with whom were *Robert P. Knickerbocker, Jr.,* and, on the brief, *Americo R. Cinquegrana,* for the appellees (defendants Richard H. Bowerman et al.).

*Edgar W. Bassick III,* for the appellee (defendant A. George Lindquist).

MacDonald, J.   This action in the nature of a shareholder's derivative suit was brought by the plaintiff, John P. Barrett, against a corporate defendant, the Southern Connecticut Gas Company, hereinafter "Southern," and against certain individual defendants who, at relevant times, were officers or directors of Southern, seeking damages for alleged waste of corporate assets in pursuing a corporate merger between Southern and the Greenwich Gas Company, hereinafter "Greenwich."   Upon stipulation by the parties that the matter be referred to a state referee pursuant to §§ 52-434 and 52-434a of the General Statutes, the *Hon. John R. Thim,* state trial referee, was appointed to hear the case, with all the powers of the Superior Court.   The complaint, in summary, alleged that expenses incurred by Southern in pursuit of the proposed merger resulted in damage to the corporation on the ground that the merger, if approved, would have been unfavorable to Southern and its stockholders.

The defendants, in addition to denying the substantive allegations of the complaint, pleaded five special defenses directed to the standing and capacity of the plaintiff to initiate and maintain this action, as follows:   (1) Barrett was not a shareholder at the time of the alleged wrong, i.e., when the formal agreement and plan of merger were executed; (2) Barrett failed to exhaust his corporate

remedies by making a demand upon Southern shareholders before initiating this action; (3) the decision of the defendants to pursue the merger was ratified by Southern's shareholders at their special meeting of March 15, 1972; (4) the reelection of the incumbent directors at Southern's annual stockholders' meeting on April 17, 1973, constituted a further implied ratification of the defendants' actions regarding the merger since at that time the shareholders had been fully informed of such action; and (5) Barrett cannot adequately and fairly represent the interests of the corporation and its shareholders due to his interests adverse to the corporation and its shareholders, as evidenced by his opposition to Southern's rate increase application and by his simultaneous maintenance of a personal damage action against the corporation. Those five special defenses were, in turn, denied by Barrett, and the defendants then moved for summary judgment on each of the five special defenses on the ground that affidavits and other documentary proof submitted by them demonstrated that no genuine issue of material fact existed as to the plaintiff's lack of standing and capacity to bring a derivative action and that the defendants were, therefore, entitled to judgment as a matter of law.

The court granted summary judgment on the first, third, fourth and fifth special defenses but denied it on the second. The plaintiff's motion for reargument was denied and he then took this appeal, assigning as error the court's granting of summary judgment on the four special defenses, its determination of the issues raised by the third, fourth and fifth special defenses on a motion for summary judgment since those defenses involved contested issues of material fact, and its denial of his motion for

reargument. The defendants filed a bill of exceptions to the denial of summary judgment on the second special defense.

In our view, the issues raised by the fifth special defense, challenging the adequacy and fairness of the plaintiff's representation of Southern shareholders, are dispositive of this appeal. We will, therefore, first discuss the unchallenged factual background of Barrett's relationship with Southern as disclosed by the record, and then the legal implications of that relationship.

I

BACKGROUND OF THE PLAINTIFF'S RELATIONSHIP WITH SOUTHERN

The complaint, together with the affidavits and exhibits filed by both sides in connection with the summary judgment motions, reveals that this action arose out of the announcement by the boards of directors of Southern and Greenwich on July 12, 1971, of agreement on the terms of a proposed merger of the two utilities. Under the formal merger agreement and plan of merger executed by the two boards on December 22, 1971, Greenwich was to merge into Southern as the surviving corporation. Barrett purchased fifty shares of the common stock of Southern in early 1972, claiming, in his counter affidavit to the summary judgment motions, that he bought the shares upon the belief that the proposed merger made Southern a good investment. Approximately six weeks after becoming a Southern shareholder, Barrett voted against the merger proposal at a special meeting of Southern's shareholders held on March 15, 1972, for the purpose of explaining the details of the merger plan and securing stockholder approval. Ninety-seven per-

cent of the common shares voted and 100 percent of the preferred shares voted endorsed Southern management's merger proposal at the special meeting.

Thereafter, the two companies requested approval of the merger in hearings before the public utilities commission, hereinafter the commission, as required under § 16-43 of the General Statutes. Barrett applied, through counsel, to the commission for permission to appear as a party at the hearings concerning the proposed merger. Permission was granted, and Barrett appeared personally and through counsel at the hearings, cross-examining witnesses, introducing evidence in opposition, and filing a detailed brief and proposed findings of fact, all in support of his claim that the merger would have a substantial adverse effect on Southern and its shareholders. After the hearings, Barrett explained his opposition to the merger in a letter addressed to the defendant directors and officers claiming that (1) the defendants had improperly concealed a $624,000 stock redemption item, required under the merger contract, in the proxy statement explaining the merger; (2) the defendants had falsely represented that Southern's bid for Greenwich was only slightly higher than the bid offered by another gas utility seeking to merge, when, in fact, Southern's bid was, on a dividend comparison basis, 54 percent higher; (3) the defendants had wrongly represented that substantial administrative savings would exceed the costs of the merger, when in fact, the alleged savings would not occur; and (4) the terms of the merger were highly unfavorable to the interests of Southern's shareholders.

The commission denied the application of Southern and Greenwich to merge on July 7, 1972. A tran-

script of the commission's decision was included in the record, and, while the decision did not discuss Barrett's opposition to the merger, it questioned the economics of the merger proposal on some of the same grounds as did Barrett.

Meanwhile, Southern, on June 5, 1972, filed a separate application with the commission requesting a rate increase on the ground that it was necessary to meet increased operating expenses and to ensure a fair return on equity to Southern shareholders. Barrett petitioned the commission to be designated as a party in opposition, claiming to believe that the application for a rate increase was in part an attempt by the defendants to conceal the increased costs to Southern which would result if the merger were approved. The chairman of the commission stated that as a stockholder Barrett should not be before the commission, but did permit him to intervene as a ratepayer. Subsequently, on December 29, 1972, the commission approved over 80 percent of Southern's voluntarily amended requested rate increase.

On December 14, 1972, five months after the commission had denied the merger, Barrett filed an individual damage action against Southern in the Superior Court in Fairfield County, alleging that the commission had denied the merger application as a direct result of Barrett's opposition to it, that Southern and its stockholders had benefited from his opposition to the merger, since denial of the merger saved Southern some $4,000,000 in increased costs, and that he was therefore entitled to $500,000 in personal damages. That action is still pending.

Three months later, on March 6, 1973, Barrett brought this derivative action seeking $500,000 in damages on behalf of the corporation from

the individual directors and officers for alleged waste of corporate assets in pursuing the aborted merger attempt. He included in his complaint substantially the same allegations he had made before the commission when he opposed the merger, including his claim that false and misleading statements made by the defendants to Southern shareholders about the terms and consequences of the proposed merger made the plan seem more attractive than it actually was. The waste of corporate assets allegedly consisted of unnecessary or wasteful legal and accounting fees, unnecessary or wasteful man-hours expended, printing, postage and registration fees and other expenses directly related to the proposed merger. As previously mentioned, the defendants answered Barrett's derivative complaint by denying its substantive allegations and by pleading five special defenses, each claiming that Barrett lacked either standing or capacity to maintain this action on behalf of the corporation and its other shareholders.

## II

### REQUIREMENTS OF FAIR AND ADEQUATE REPRESENTATION IN A SHAREHOLDER'S DERIVATIVE ACTION

Since this appeal arises primarily from the action of the trial court in granting summary judgment for the defendants on the first, third, fourth and fifth special defenses, and since we have previously indicated that we consider as dispositive of the appeal the issues raised by the fifth special defense, namely, the inability of the plaintiff adequately and fairly to represent the interests of Southern or its shareholders because of adverse and conflicting interests, we will next consider the legal issues raised by that defense.

A shareholder's derivative suit is an equitable action by the corporation as the real party in interest with a stockholder as a nominal plaintiff representing the corporation. *Allen* v. *Curtis,* 26 Conn. 456, 460–61; 13 Fletcher, Cyclopedia of Corporations (Perm. Ed.) § 5939. It is designed to facilitate holding wrongdoing directors and majority shareholders to account and also to enforce corporate claims against third persons. "If the duties of care and loyalty which directors owe to their corporations could be enforced only in suits by the corporation, many wrongs done by directors would never be remedied." Cary, Corporations (4th Ed.), p. 868.

The use of a nominal plaintiff in a derivative action makes it an unusual procedural device by reason of its dual nature in that it consists of the basic cause of action, which pertains to the corporation and on which the corporation might have sued, and the derivative cause of action, based upon the fact that the corporation will not or cannot sue for its own protection. 13 Fletcher, op. cit. § 5946. "Thus the dual nature of the stockholder's action: first, the plaintiff's right to sue on behalf of the corporation, and, second, the merits of the corporation's claim itself." *Ross* v. *Bernhard,* 396 U.S. 531, 534–35, 90 S. Ct. 733, 24 L. Ed. 2d 729.

With regard to the first cause of action, the defendants in a derivative action may properly question whether the plaintiff has standing in equity to act as the nominal shareholder acting on behalf of the corporation and the other shareholders. *Slutzker* v. *Rieber,* 132 N.J. Eq. 412, 28 A.2d 528. In this aspect of a derivative suit, the corporation is a named defendant, and it also has the right to object to and question the capacity of a minority share-

holder to bring suit on its behalf. *National Bankers Life Ins. Co.* v. *Adler,* 324 S.W.2d 35 (Tex. Civ. App.); *Ireland* v. *Wynkoop,* 539 P.2d 1349, 1360 (Colo. App.).

The standing of the nominal shareholder plaintiff is important largely because of the res judicata effect of a judgment rendered in a derivative action which has proceeded to adjudicate the merits of the corporate claim. 13 Fletcher, op. cit., § 6043. In this respect, the derivative action resembles other representative suits, including the class action, since the plaintiff is able to foreclose all future litigation by other shareholders or the corporate directors by obtaining a judgment on the merits of the corporate cause, even if the judgment is adverse. See note, "Res Judicata in the Derivative Action: Adequacy of Representation and the Inadequate Plaintiff," 71 Mich. L. Rev. 1042, 1045–46; Restatement, Judgments §§ 80, 85, 86. Particularly in jurisdictions where shareholder suits are common, courts have developed equitable standards to assure procedural fairness. These conditions act as prerequisites that the shareholder must satisfy in order to assert the alleged corporate claim as a representative plaintiff. See Rule 23.1, Fed. R. Civ. Proc.; note, 71 Mich. L. Rev., supra 1043–45; 13 Fletcher, op. cit. §§ 5942, 5943; Chafee, Some Problems of Equity, 243.

Among those equitable standards is that raised by the defendants' fifth special defense, namely, the requirement that the nominal plaintiff fairly and adequately represent the shareholders on whose behalf he purports to sue. The United States Supreme Court has summarized the policy basis for the requirement of adequate and fair representation in derivative suits in the following language: "[A] stockholder who brings suit on a cause of

action derived from the corporation assumes a position, not technically as a trustee perhaps, but one of a fiduciary character. He sues, not for himself alone, but as representative of a class comprising all who are similarly situated. The interests of all in the redress of the wrongs are taken into his hands, dependent upon his diligence, wisdom and integrity. And while the stockholders have chosen the corporate director or manager, they have no such election as to a plaintiff who steps forward to represent them. He is a self-chosen representative and a volunteer champion. The Federal Constitution does not oblige the State to place its litigating and adjudicating processes at the disposal of such a representative, at least without imposing standards of responsibility, liability and accountability which it considers will protect the interests he elects himself to represent." *Cohen* v. *Beneficial Industrial Loan Corporation,* 337 U.S. 541, 549–50, 69 S. Ct. 1221, 93 L. Ed. 1528.

Since 1966, the Federal Rules of Civil Procedure have explicitly provided that a "derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders or members similarly situated in enforcing the right of the corporation or association." Rule 23.1; 13 Fletcher, op. cit. § 5943. See annotation, "Requirement of Rule 23.1 of Federal Rules of Civil Procedure That Plaintiff in Shareholder Derivative Action 'Fairly and Adequately Represent' Shareholders' Interests in Enforcing Corporation's Right," and authorities therein cited, 15 A.L.R. Fed. 954. Similarly, Rule 23 covering class actions in the federal courts makes fair and adequate representation of the interests of the class a prerequisite to a party acting as a class

representative. Rule 23 (a) (4).[1] The federal rule of fair and adequate representation has been adopted in a number of states. 13 Fletcher, op. cit., §§ 5972 (Sup.), 6003.1.

The rule is derived from the equitable nature of the derivative suit as well as the due process limitation that a judgment in a representative suit operates as res judicata only on those unnamed parties whose interests were adequately protected. Restatement, Judgments § 86, comment b; *Eisen* v. *Carlisle & Jacquelin,* 391 F.2d 555, 562 (2d Cir.); *duPont* v. *Wyly,* 61 F.R.D. 615, 622 (D. Del.). Adequate and fair representation consists of the nominal plaintiff's having interests and issues coextensive with those of the class of shareholders he seeks to represent and being able to assure the trial court that as a representative, he will "put up a real fight." Chafee, Some Problems of Equity, pp. 231, 236.

We agree that the defendants in a shareholder derivative action may properly attack the standing in equity of the nominal plaintiff on the grounds that the plaintiff cannot assure the court that he will provide fair and adequate representation, and we further conclude that, on the undisputed facts presented to the trial court as hereinafter discussed, there was no error in its determination that Barrett failed to satisfy that equitable requirement.

[1] Prior to 1966, shareholder derivative suits and class actions in the federal courts were both covered by Rule 23, and adequacy and fairness of representation arose as an issue under the rule's provision that a class action could be maintained only by one of the class "as will fairly insure the adequate representation of all." The standards for adequate representation under current Rules 23 (a) (4) and Rule 23.1 remain "essentially the same . . . and cases interpreting Rule 23 may be effectively utilized in analyzing the requirements of Rule 23.1. See 7A C. Wright & A. Miller, Federal Practice and Procedure, § 1833." *G. A. Enterprises, Inc.* v. *Leisure Living Communities, Inc.,* 517 F.2d 24, 26 n.3 (1st Cir.).

## III

### APPLICATION OF EQUITABLE STANDARD TO FACTS OF THIS ACTION AS PRESENTED TO THE COURT

The defendants, in their fifth special defense, attacked the representative qualifications of Barrett as a nominal plaintiff on the grounds that he had interests antagonistic to those of many Southern shareholders and that those conflicts made it possible that he would not vigorously pursue the alleged corporate claim. The real issue is whether an inquiry of "all possible antagonisms between the interests of the representative and those of the class"; *duPont* v. *Wyly,* supra, 623; reveals conflicts which make it "likely that the interests of the other stockholders will be disregarded in the management of the suit." *G. A. Enterprises, Inc.* v. *Leisure Living Communities, Inc.,* 517 F.2d 24, 27 (1st Cir.).

The undisputed facts appearing in the record in this action reveal many of the same circumstances which have led other courts to conclude that a nominal plaintiff has conflicts that preclude assurance of fair and adequate representation of all other shareholders. Most importantly, prior to the institution of this suit, Barrett brought an individual damage action against Southern for $500,000 in damages for the benefits he claims he conferred on Southern by preventing the Greenwich merger. Thus, Barrett obviously seeks to act on behalf of Southern and all its shareholders at the same time he is demanding of them, as damages, funds which the corporation might otherwise use for dividends. Particularly in the light of the fact that the four million dollars in increased costs which Barrett claims he saved South-

ern did not generate any cash, it is clear that the damages Barrett seeks in his individual action will adversely affect the equity interest of the same Southern shareholders he purports to represent in this action. The conflict between Barrett's simultaneous maintenance of the individual and derivative actions is made even clearer by the undisputed fact that both suits arise out of the same dispute. Barrett believes the corporation deserves $500,000 in damages from its directors and officers for money allegedly wasted in the merger attempt, but, at the same time, he claims that his individual role in blocking the merger entitles him to $500,000 in damages from the corporation. In the light of the shareholder approval of Southern management and its merger proposal, as clearly shown in the record, Barrett's role in both suits suggests strongly that the real dispute here is between only Barrett and Southern's directors and officers, and we find that the trial court reasonably could conclude that Barrett's good faith averments were insufficient assurance that he would provide fair and adequate representation devoid of personal considerations.

The situation presented here is closely analogous to that described in *G. A. Enterprises, Inc.* v. *Leisure Living Communities, Inc.*, 517 F.2d 24 (1st Cir.), where the United States Court of Appeals for the First Circuit upheld a trial court's dismissal of a derivative action on the grounds that the nominal plaintiff, in that case a corporation, could not assure that it would fairly and adequately represent the interests of all the shareholders. G. A. Enterprises, Inc., the nominal plaintiff in the action against individual directors and officers and majority shareholders of Leisure Living, was controlled by one George Kattar, who was involved in various busi-

ness arrangements with Leisure Living. That relationship included an agreement to sell Kattar assets to Leisure Living, which became involved in financial difficulties which spawned litigation between the two parties. Given the complex business arrangements involved, the trial court concluded that the derivative suit, as one of several suits between the two, ran too great a risk of losing its special character as a derivative action. In affirming the action of the trial court, the Court of Appeals described the prior relationship between Kattar and Leisure Living as presenting "an obvious conflict of interest" and also stressed the discrepancy between Kattar's interest in the derivative suit and his interest in the individual actions against Leisure Living. Kattar's stock interest in Leisure Living was less than 1 percent of the outstanding shares while Kattar-controlled G. A. Enterprises, Inc., valued its claims against the corporation at four million dollars. As stated by the court (p. 26) in language peculiarly applicable to the case before us, "GA's own interests, or at least the interests of its principal, suggest that from its standpoint the 'highest and best' use of the derivative suit would be as a weapon in the total Kattar arsenal, to be either pursued, de-emphasized, or settled as the future course of the larger claims might dictate. Since the suit threatens Leisure Living's managers with individual liability, it provides leverage that could affect how doggedly they pursue Leisure Living's own claims and defenses against Kattar in other areas. So manipulated, the derivative suit would serve interests beyond and perhaps contrary to those of the other minority shareholders."

We believe that the trial court here properly concluded that much the same likelihood for abuse existed with this derivative action in the light of the

preexisting relationship between Barrett and Southern. That relationship included his unsuccessful proxy fight and his opposition to Southern's application for a rate increase, in addition to his individual damage action. Barrett's financial interest in any recovery he won for Southern in the derivative action would be negligible, assuming Southern distributed the recovery to the shareholders, but his interest in a successful completion of his individual action would be substantial. "[T]he many faceted relationship between [Barrett] and [Southern] suggests that this suit may be an attempt to open still another front in a wide ranging battle having objectives unrelated to those shared by the class." *duPont* v. *Wyly,* 61 F.R.D. 615, 622 (D. Del.).

The trial court's ruling was not based on doubts as to the competence of the plaintiff's counsel or the vigor with which the case was being pressed in its initial stages. The standard is one of potential for abuse, and thus the plaintiff's averments of good faith and a desire to benefit the corporation cannot overcome the type of conflict which maintenance of both an individual and a derivative action suggests. The kind of assurance demanded by due process and the equitable requirement of adequate and fair representation is that the nominal plaintiff "be free of any interest which holds the potential of influencing his conduct of the litigation in a manner inconsistent with the interests" of Southern shareholders. *duPont* v. *Wyly,* supra, 624. Other courts have agreed that there is an irreconcilable conflict of interest where an individual is a plaintiff in a stockholders' derivative action seeking recovery on behalf of a corporation and is also a party to another suit attacking the corporation and seeking recovery from it. See *Nolen* v. *Shaw-Walker Co.,* 449 F.2d 506 (6th

Cir.); *Quirke* v. *St. Louis-San Francisco Ry. Co.,* 277 F.2d 705 (8th Cir.); *Ruggiero* v. *American Bioculture, Inc.,* 56 F.R.D. 93 (S.D. N.Y.).

## IV

### DETERMINATION OF ISSUE BY SUMMARY JUDGMENT

In addition to appealing the trial court's determination that he lacked standing in equity to bring this derivative action, the plaintiff argues that it was error for the court to make that determination on a motion for summary judgment "when such fact was either not established by defendants or was contested by plaintiff, and was therefore improper for summary determination." Practice Book § 303 provides that the entry of summary judgment is appropriate "if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

The plaintiff argues that the trial court's "factual conclusion that Barrett is involved in an irreconcilable conflict of interest" was improper as a basis for summary determination since it involved genuine issues of material fact. "A 'material' fact has been defined adequately and simply as a fact which will make a difference in the result of the case." *United Oil Co.* v. *Urban Redevelopment Commission,* 158 Conn. 364, 379, 260 A.2d 596.

We disagree with the plaintiff's argument that whether or not his prior relationship with Southern poses conflicts with his suing derivatively on behalf of it is a factual determination. A conflict is a legal determination, and the material facts which constitute Barrett's conflict here were not in dispute. As previously mentioned, Barrett's motives, about

which the parties were concededly in dispute, are not helpful in making that determination since, in a multifaceted situation such as that posed here, at any given moment pursuit of the derivative action might serve Barrett's personal interests, but it is equally possible that it might not. *G. A. Enterprises, Inc.* v. *Leisure Living Communities, Inc.,* 517 F.2d 24, 26 n.5 (1st Cir.). We make that observation assuming the truth of the plaintiff's allegations as pleaded. We conclude only that, whatever corporate claims against its directors and officers Southern may have as a result of the aborted merger attempt, Barrett is not a proper plaintiff to assert them. Where in a derivative suit, as here, there is an involuntary dismissal based on procedural defects peculiar to the nominal plaintiff, the judgment rendered does not reach the merits of the corporate claim. Note, "Res Judicata in the Derivative Action: Adequacy of Representation and the Inadequate Plaintiff," 71 Mich. L. Rev. 1042, 1046 n.23. But any degree of wrongdoing by the defendants will not give Barrett the standing in equity he otherwise lacks. *Bangor Punta Operations, Inc.* v. *Bangor & Aroostook R. Co.,* 417 U.S. 703, 717 n.14, 94 S. Ct. 2578, 41 L. Ed. 2d 418.

We note further that the issue of whether Barrett could assure the court of adequate representation of Southern and its shareholders must necessarily be resolved before proceeding to the merits of the corporate claim in a derivative suit brought by him. His argument that the trial court should have awaited final resolution of his suits before determining whether his representation of the corporation was fair and adequate overlooks the fact that there are practical limits to the effectiveness of judicial supervision. In such a situation, the trial court

could properly conclude that there could be no assurance that the plaintiff would not consciously or unconsciously sacrifice the interests of the corporation and the shareholders in the derivative suit for a personally attractive settlement of his individual claim.

In the light of the lack of dispute over the basic fact of Barrett's individual damage action against Southern, the trial court acted properly in resolving the issue of fair and adequate representation on a motion for summary judgment, and the motion for reargument was correctly denied. In view of our decision, it is unnecessary to consider the issues raised by the court's granting of summary judgment on the first, third and fourth special defenses and its denial of summary judgment on the second special defense as raised by the defendant's bill of exceptions.

There is no error.

In this opinion HOUSE, C. J., LOISELLE and LONGO, Js., concurred.

BOGDANSKI, J. (dissenting). The effect of the majority opinion is to hold that a shareholder who has brought an action to recover compensation for services rendered on behalf of a public service corporation, and who opposed a rate hike by that corporation as a ratepayer, without more, is rendered unfit to represent the corporation in a derivative suit. That incapacity would be imposed without regard to the merits of the two suits, or its impact in preventing continued prosecution of the derivative suit. I do not agree since such a holding and result would be contrary to law and reason.

The trial court prohibited Barrett from prosecuting the derivative action because "[t]he undisputed facts establish that Barrett's interests are irreconcilably adverse to and in conflict with the best interest of the corporation and the shareholders which he claims to represent." That factual conclusion was based on two actions taken by Barrett: (1) his bringing of a suit, still pending, against Southern for compensation, and (2) his opposition as a ratepayer to a requested rate increase.

Barrett brought a suit to recover from Southern the value of his services rendered and expenses incurred on Southern's behalf in successfully opposing a merger which he alleged would have cost Southern and its shareholders a great many times over the amount he claims as compensation. Should Barrett prevail in that action, he will have established that his efforts resulted in saving Southern and its shareholders from a large financial net loss by (a) preventing a payment of over $250,000 per annum in additional dividends to Greenwich shareholders; (b) preventing Southern's per share earnings from dropping; (c) preventing the book value of Southern's stock from dropping approximately $3,500,000; (d) preventing further waste of corporate assets in merger plans; and (e) preventing a drop of $624,000 in Southern's unrestricted retained earnings. The public utilities commission agreed in substance with Barrett's objections to the merger, and denied the proposed merger. On those allegations, it can hardly be said that Barrett was "attacking the corporation"; rather, he was seeking only a fraction of what he had saved it.

Barrett appeared before the public utilities commission as a ratepayer in opposition to a requested rate hike by Southern. The trial court suggested

that that opposition could have adversely affected Southern's income and the return on its shareholders' equity. The court, however, failed to give due consideration to the fact that Barrett's intervention was as a *ratepayer* and that that intervention questioned the need for the increase in view of "Southern's cost-accounting methods, cost and income projections and the impact of [its] recent and futile merger application." Considering the fact that Southern thereafter voluntarily amended its rate request and that the commission granted only a part of that amended request, it cannot be said that Barrett's opposition as a ratepayer to the original request was unjustified or unreasonable.

From the granting of summary judgment in the derivative action which is before us, the following relevant facts should be noted: (a) the suit was not brought against Southern or its shareholders, but rather on behalf of Southern and its shareholders; (b) the suit was brought against the named directors and officers individually who are alleged to have wasted Southern's assets; (c) any recovery made as the result of the present derivative action would inure to the benefit of the corporation and its shareholders. Moreover, in the context of a summary judgment proceeding, the court was not warranted in finding without an evidentiary hearing that Barrett possessed an interest irreconcilably adverse to the corporation and shareholders on the basis of his suit for compensation and his opposition to the rate increase.

A conflict of interest does not exist merely because of a simultaneous damage action and a derivative action. *Miller* v. *Fisco, Inc.,* 63 F.R.D. 132 (E.D. Pa.). With respect to the claims of "conflicts" or

"adverse interests" the court in *Heilbrunn* v. *Hanover Equities Corporation*, 259 F. Sup. 936 (S.D. N.Y.) recognized (p. 939) that "[a]s to the role of plaintiffs as both 'friend' and 'enemy' to the corporation, this surface duality is in fact a routine matter in the courts. For more purposes than pleading, 'antagonism' between the derivative plaintiff and those who really run (i.e., are) the corporation is a common phenomenon. Cf. *Smith* v. *Sperling*, 354 U.S. 91, 77 S. Ct. 1112, 1 L. Ed. 2d 1205 (1957). We need look no farther for illustration than this case, where the corporation and its able counsel pull the laboring oar on a motion to dismiss a claim purportedly for the corporation's benefit. *In the last analysis, considering only the complaint, which is all we have, the action has a basic goal which entails no real inconsistencies — to air the nature and allegedly wrongful aspects of the exchange offer plaintiffs assail."* (Emphasis added.)

Barrett vigorously contested the allegations that his interests were adverse to or in conflict with those of the corporation. Since Barrett contested those factual claims, the trial court should have received testimony on that issue before deciding that question of fact. Because the court's conclusions constituted findings of contested facts in a summary judgment proceeding, granting summary judgment was reversible error.

Throughout these proceedings, the defendants have failed to answer the important question: who else except for Barrett remains to represent the interests of the corporation and those Southern shareholders who believe the defendants' performance has been less than exemplary? Courts have the duty to enforce fair and equitable standards over

the bringing of derivative actions. But it is quite another matter for courts to bar the maintenance of a suit at the summary judgment stage, where the plaintiff disputes the defendants' claims of alleged conflicts of interests, and where the plaintiff Barrett is the only shareholder to assert those rights on behalf of the corporation.

Neither should Barrett be barred from maintaining this action on the basis of any purported ratification by Southern's shareholders. There could not have been any finding of ratification of the defendants' activities, either at the 1972 special meeting or by way of the 1973 proxy contest, since there was no showing that Southern's shareholders had knowledge of all the material facts surrounding the proposed merger with Greenwich.

The function of the courts of this state is to adjudicate cases on their merits. The requirements of standing, as such, particularly where no evidentiary hearing has been had, should not be applied so as to become an obstacle to judicial review. "If rules of procedure work as they should in an honest and fair judicial system, they not only permit, but should as nearly as possible guarantee that bona fide complaints be carried to an adjudication on the merits." *Surowitz* v. *Hilton Hotels Corporation,* 383 U.S. 363, 373, 86 S. Ct. 845, 15 L. Ed. 2d 807, rehearing denied, 384 U.S. 915, 86 S. Ct. 1333, 16 L. Ed. 2d 367.

Lastly, it would appear from the record that there is an ongoing power struggle between the plaintiff and the defendants. It is also true that the courts often become the forum and arbitrator of such struggles. As the parties on both sides possess substantially equal and significant legal rights in the subject matter of this litigation, they are both en-

titled to a full adjudication of their claims before the courts. Because the material facts in this case were vigorously disputed, the granting of the defendants' motions for summary judgment was improper.

I would find error, set aside the judgment and remand the case for a trial on the merits.