[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action brought by the Commissioner of Environmental Protection to recover costs incurred in cleaning up toxic material. Pursuant to General Statutes § 22a-451 of the General Statutes, the Commissioner has alleged that the Department of Environmental Protection (DEP) investigated, contained, removed, monitored and mitigated pollution and seeks to recover the costs incurred thereby from the defendants, Xtra Lease, Inc. and Tri-Express, Inc. Section 22a-451 provides that the commissioner may recover such costs from one who "directly or indirectly causes pollution and contamination of any land or waters of the state or directly or indirectly causes an emergency through the maintenance, discharge, spillage, uncontrolled loss, seepage or filtration of oil or petroleum or chemical liquids or solid, liquid or gaseous products of hazardous wastes. . . ." Both defendants argue, in motions for summary CT Page 14192 judgment, that they did not "directly or indirectly cause" any such thing. The primary issue to be resolved is whether the legislature intended any limitation on the concept of "direct or indirect cause."
The complaint[1] alleges that the defendant Xtra Lease was the owner of a trailer which was found at 81 Black Rock Turnpike in Fairfield, CT on September 30, 1994, and in which approximately 108 abandoned drums were found in a condition such that pollutants were leaking and spilling from the drums. It alleges that the defendant Tri-Express was the lessee of the trailer. In counts one and three, the commissioner alleges that Xtra Lease and Tri-Express, respectively, directly or indirectly caused pollution and contamination; in counts two and four, the commissioner claims that each directly or indirectly caused an emergency situation through the maintenance., discharge, spillage, uncontrolled loss, seepage or filtration of pollutants.
Xtra Lease has submitted materials in connection with its motion for summary judgment showing that it did indeed lease the trailer in question to Tri-Express, but it otherwise had nothing to do with the toxic problem. Its lease prohibited the transport of hazardous materials, and it did not anticipate that pollutants or potential pollutants would be transported in this trailer. It had no reason to believe that the trailer would be transporting any sort of hazardous waste and did not in fact know that any such material was in the trailer. It also did not know that the trailer had been stolen, as it apparently had been after it had been leased to Tri-Express. In sum, Xtra Lease's materials support the factual conclusion that it did nothing other that lease a trailer to a customer, and the lease specifically prohibited the lessee from transporting the sort of material which was ultimately found in and about the trailer. The commissioner does not factually contest any of these assertions.
In its motion for summary judgment, Tri-Express agrees that it leased the trailer from Xtra Lease on July 8, 1994, and that the trailer was found abandoned on September 30, 1994. Tri-Express is in the business of hauling cargo between airports, and had no reason to believe that the trailer would be used to haul hazardous waste. It similarly had no reason to believe that it would be stolen. The commissioner disputes the position of Tri-Express, at least to a degree. It produced, in opposition to the motion for summary judgment, copies of documents tending to show that Tri-Express was careless with its trailers, had been careless with the trailer in question,[2] and in effect had reason to believe that the trailer would indeed be stolen.
The defendants' stance, at the risk of generalization, is that some limitation on the language "directly or indirectly causes" is to be imposed. The commissioner argues that the language is clear, and any CT Page 14193 finding of a causal connection between the defendants and the pollution or emergency, however remote, as opposed to a finding of proximate cause, is all that is required to impose liability.
Summary judgment should be granted "if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Section 17-49 of the Practice Book. A material fact is one which will make a difference in the result. Barrett v. SouthernConnecticut Gas Company, 172 Conn. 362, 378 (1977). The movant has the burden of showing the absence of a genuine issue, and the evidence is to be viewed in the light most favorable to the nonmoving party. Hammer v.Lumberman's Mutual Casualty Company, 214 Conn. 573, 578 (1990). If the moving party successfully sustains its burden, the opposing party has the burden of presenting evidence to show that there is a genuine issue. It is not enough to state in conclusory fashion that an issue exists. Dailyv. New Britain Machine Company, 200 Conn. 562, 568 (1986). The motion should be granted if a verdict would be directed on the same evidence.Batick v. Seymour, 186 Conn. 632, 647 (1984).
"[S]tatutory interpretation is a question of law." (Internal quotation marks omitted.) Collins v. Colonial Penn Ins. Co., 257 Conn. 718, 728,778 A.2d 899 (2001). "When we construe a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . . Furthermore, [w]e presume that laws are enacted in view of existing relevant statutes . . . because the legislature is presumed to have created a consistent body of law." (Internal quotation marks omitted.) Id., 728-29. "In the absence of guidance from the language of the statute or the legislative history, we look to common law principles. . . . It is assumed that all legislation is interpreted in light of the common law at the time of enactment." (Citations omitted; internal quotation marks omitted.) Statev. Miranda, 245 Conn. 209, 220 n. 13, 715 A.2d 680 (1998).
"We construe each sentence, clause or phrase to have a purpose behind it. . . . In addition, we presume that the legislature intends sensible results from the statutes it enacts. . . . Therefore, we read each statute in a manner that will not thwart its intended purpose or lead to absurd results. . . ." (Citations omitted.) Collins v. Colonial PennIns. Co., supra, 257 Conn. 728-29. "Words in a statute must be given their plain and ordinary meaning . . . unless the context indicates that a different meaning was intended. . . . No word or phrase in a statute is CT Page 14194 to be rendered mere surplusage. . . . In applying those principles, we keep in mind that the legislature is presumed to have intended a reasonable, just and constitutional result" (Citations omitted; internal quotation marks omitted.) Gelinas v. West Hartford, 65 Conn. App. 265,276, ___ A.2d ___ (2001).
With these principles[3] in mind, we consider the import of the phrase "directly or indirectly cause." In its first memorandum in support of its motion for summary judgment, Xtra Lease constructs the following argument. Relying primarily on Keeney v. Town of Old Saybrook,237 Conn. 135 (1996), it suggests that Chapter 446k, regarding water-pollution control and in which § 22a-451 is found, should be read in the context of the common law of public nuisance. In § 22a-422, entitled a "declaration of policy," the legislature stated that water pollution is, among other things, a public nuisance, and the prior case ofStarr v. Commissioner of Environmental Protection, 226 Conn. 358 (1993), had interpreted the meaning of § 22a-432 by reference to principles of common law public nuisance.
In any event; Xtra Lease argues that Keeney held that there were but two categories of public nuisances: those created intentionally and those created negligently. It argues, quite convincingly, that the facts do not support a finding of any intention on its part. For one to be liable in negligent nuisance, the element of proximate cause must be satisfied. Doev. Manheimer, 212 Conn. 748, 757 (1989). A proximate cause, of course, is a substantial factor which at least sets in motion the final active injurious force. Ferndale Dany, Inc. v. Geiger, 167 Conn. 533, 538
(1975). Because the causal relation between any act of Xtra Lease and any pollution is, at best, remote, Xtra Lease argues that the element of proximate cause cannot be satisfied on the facts of this case and summary judgment should be entered in its favor. Tri-Express posits much the same argument.
The commissioner's countering argument is persuasive. It distinguishesKeeney by pointing out the difference in the language between § 22a-427
("no person or municipality shall cause pollution. . . .") and §22a-451 (". . . directly or indirectly causes. . . .")" and argues that the specific inclusion of the word "indirect" negates an intention of the legislature to require the application of the more restrictive proximate cause standard. Further, the analogy to the two kinds of public nuisance, intentional and negligent, breaks down in the context of the specific language of § 22a-451: although a polluter who directly or indirectly causes pollution is liable for the cost of cleanup, one who pollutes negligently is liable for one and a half times the cost, and one who pollutes intentionally is liable for twice the cost. Some degree of scienter less than negligence is contemplated, then, so that the CT Page 14195 proximate cause requirement does not necessarily follow, at least from the argument presented.
The reply of Xtra Lease to the state's memorandum in opposition takes a somewhat different tack. It argues that "indirect cause" has no clearly defined meaning, and that the legislative history is of little assistance. Other jurisdictions, including the federal counterpart, do not help. Because some causation requirement was retained, Xtra Lease argues, reference to the common law notions of proximate cause are apropos, and policy considerations militate against finding no limitation on causation. Tri-Express did not respond to the commissioner's memorandum, and the commissioner did not reply to the reply.
The rather narrow issue of law to be resolved can be simply stated: does the language indirect cause" in the context of Chapter 446k carry with it any limitation on the universe of those liable other than cause in fact? With reference to the principles of statutory construction stated above, I conclude that there are limitations to the concept of indirect cause, in context, and that summary judgment should be granted in favor of Xtra Lease. The result as to Tri-Express is different.
The primary consideration, of course, is the intention of the legislature. A review of the history of § 22a-451 is not especially helpful in the resolution of the issue. Section 22a-451, originally § 25-54ee, has its inception in Public Acts 1969, No. 765, § 4, An Act Concerning the Oil Pollution of Connecticut Waters. Section 4 of the Public Act provided that "[a]ny person, firm or corporation which directly or indirectly causes pollution and contamination of any waters of the state through the discharge, spillage, seepage, filtration or otherwise of oil or any petroleum or chemical liquid or product shall be liable for all costs and expenses incurred by said commission in containing and removing such pollution and contamination. "[4] The legislative history of the act does not discuss the phrase "directly or indirectly causes." The senate discussion does reveal that Senate Bill No. 1159, which later became Public Act 765, was "patterned after Massachusetts law." 13 S. Proc., Pt. 6, 1969 Sess., p. 2768, remarks of Senator Gunther. It is unlikely, however, that the cost recovery provision of the act was derived from Massachusetts law. Xtra Lease argues that Senator Gunther's remarks indicate that § 22a-451 is based on Mass. Gen Laws ch. 21, § 42 and that the court should therefore look to that statute and any interpretive case law for guidance in interpreting § 22a-451.[5] (Xtra Lease's Reply to Memorandum in Opposition to Motion for Summary Judgment, p. 6 n. 4.) Section 42, however, provides for the imposition of civil and criminal penalties, not the recovery of cleanup costs. The Massachusetts law allowing the state to recover cleanup costs, Mass. Gen. Law ch. 21E § 5, was not enacted CT Page 14196 until 1983 and is not, therefore, relevant to discerning the Connecticut legislature's intent in 1969.[6] Instead, Senator Gunther's reference to Massachusetts Law, in all likelihood, referred to some other aspect of Bill No. 1159, which accomplished a variety of changes in the state's water pollution control laws. In addition to establishing a system enabling the state to recover cleanup costs, Bill No. 1159 dealt with licensing, periodic inspections, required equipment for removal of spills and reporting requirements. It also enabled the Water Resources Commission to enter into agreements with the federal, regional, state and municipal governments concerning water pollution control. 13 S. Proc., Pt. 6, 1969 Sess., pp. 2777-78. Senator Gunther's remark that the bill was based on Massachusetts law could have referred to any of these provisions, but clearly his remarks did not relate to the recovery provision, since Massachusetts had no recovery provision of its own at that time.[7]
Even if Xtra Lease were correct in claiming that § 22a-451 is derived from Mass. Gen. Laws ch. 21, § 42, the Massachusetts law provides no guidance in interpreting the phrase "directly or indirectly causes" because the phrase occurs nowhere in § 42. Instead, § 42 contains the phrase "directly or indirectly, throws, drains, runs, discharges or allows the discharge. . . ." Though the words "directly" and "indirectly" appear in the statute, they do not modify the word cause" and, therefore, Massachusetts law in existence at the time of the passage of Public Acts 1969, No. 765 is not especially helpful in discerning the Connecticut legislature's intent regarding the meaning of "directly or indirectly causes." There further do not appear to be useful analogies in the environmental enactments of the other states or of the federal government.
We are not entirely without guidance, however. In Starr v. Commissionerof Environmental Protection, supra, 226 Conn. 358, our Supreme Court addressed the question of whether an owner of land can be ordered pursuant to § 22a-432 to correct a condition which she did not create or acquiesce in creating and which was existing before she even owned the property. The language of § 22a-432 is different front the language of § 22a-451, in that the commissioner in Starr was relying on language imposing liability on those who, inter alia, "maintain" a condition that was the source of pollution. The trial court, reviewing an agency decision, had determined that "maintaining" implied some positive effort or conduct, and in light of the entire statutory scheme set forth in Chapter 446k, action against an innocent landowner should be taken only as a last resort, perhaps in the form of a lien on the land pursuant to § 22a-452a of the General Statutes. The Supreme Court reversed. It noted that the word "maintain" had no fixed meaning in the law, id., 375, and that the chapter should be interpreted broadly in light of the CT Page 14197 rather crusading nature of the legislative history. Id., 382.
Perhaps more importantly for the purpose of analysis, the court inStarr stated that the Water Pollution Control Act incorporates the common law, especially of public nuisance, where appropriate. Id. The case ofSwift v. Peoples Coal Oil, 121 Conn. 579 (1936), was cited with approval for the proposition that a nuisance may arise where a person is not in any respect negligent but where the use of the land nonetheless results in damage to his neighbor, id., 384-85, and also for the corollary that, in common law, an innocent owner out of possession was not liable for maintaining a nuisance. Id., 387. Rather, the tenant in such circumstances would be liable, according to Swift. The common law of course may be modified and, in most cases, trumped by legislation, but nuances of meaning may appropriately be determined by reference to applicable principles of common law.
As alluded to above, "indirect cause" has no precise legal meaning. Black's Law Dictionary (4th Edition 1968) defines "indirect" as "not direct in relation or connection; not having an immediate bearing or application; not related in the natural way." The commissioner argues, in essence, that the use of "direct or indirect" eliminates any limitation other than cause in fact. If this were so, on the facts of this case, the manufacturer of the tires of the trailer would be liable, as well as the gas station attendant who filled up the tank of whatever tractor pulled the trailer to Fairfield. The mind boggles at the number of people and business entities who in theory caused the pollution in fact, in the sense that the pollution would not have occurred, at least in the precise way that it did occur, without their actions.
Our jurisprudence consistently has imposed some limitation, in varying ways, on the universe of those theoretically liable to another. The concept of duty provides one such limitation, at least in a negligence action. In Lodge v. Arett Sales Corp., 246 Conn. 563, 572 (1998), for example, our Supreme Court held that there is a legal duty of care if (1) a reasonable person would anticipate that harm of the same general nature would occur in the same circumstances, and (2) public policy should allow or impose responsibility on the facts in question. On the facts ofLodge, our Supreme Court found that the harm, brake failure of afire engine responding to a false alarm negligently caused by the defendants, was not reasonably foreseeable, and further found that public policy should not allow such a widening of those liable. In a most revealing and perceptive analysis, the court reasoned that the concepts of duty and causation merged when the defendant was not the "direct" cause of the harm:
 It is impractical, if not impossible, to separate the CT Page 14198 question of duty from an analysis of the cause of the harm when the duty is asserted against one who is not the direct cause of the harm. In defining the limits of duty, we have recognized that [w]hat is relevant . . . is the attenuation between [the defendant's] conduct, on the one hand, and the consequences to and the identity of the plaintiff, on the other hand. . . . Articulated another way, the attenuation between the plaintiffs' harm and the defendants' conduct is nothing more than a determination of whether the harm was a reasonably foreseeable consequence of the defendants' conduct. It is a well established tenet of our tort jurisprudence that due care does not require that one guard against eventualities which at best are too remote to be reasonably foreseeable. . . . [A] defendant [is] not required to take precautions against hazards [that are] too remote to be reasonably foreseeable. . . . Due care is always predicated on the existing circumstances. (Citations omitted; internal quotation marks omitted.) Id., 574-75.
 Lodge further noted with approval Prosser's analysis of the problem of limiting the range of those liable:
 We noted in RK Constructors, Inc., quoting from the leading treatise on the law of torts., that the duty inquiry relating to the attenuation between the plaintiffs harm and the defendant's negligent conduct is "quite similar to the analysis that we engage in with respect to the third element of negligence, proximate causation. Indeed, as Professors Prosser and Keeton have noted, "[t]he question whether there is a duty has most often seemed helpful in cases where the only issue is in reality whether the defendant stands in any such relation to the plaintiff as to create any legally recognized obligation of conduct for the plaintiffs benefit. Or, reverting again to the starting point, whether the interests of the plaintiff are entitled to legal protection at the defendant's hands against the invasion which has in fact occurred. Or, again reverting, whether the conduct is the "proximate cause" of the result. The circumlocution is unavoidable, since all of these questions are. in reality, one and the same.' W. Prosser W. Keeton, [Torts (5th Ed. 1984)] § 42, p. 274; see also id., § 53, p. 358." Id., 574-75 CT Page 14199 n. 9.
 With respect to the question of a defendant's liability for the unforeseeable consequences of its negligent conduct, Professors Prosser and Keeton have noted that "[a]t the risk of becoming wearisome, it must be repeated that the question is primarily not one of causation and never arises until causation has been established. It is rather one of the fundamental policy of the law, as to whether the defendant's responsibility should extend to such results. In so far as the defendant is held liable for consequences which do not lie within the original risk which the defendant has created, a strict liability without fault is superimposed upon the liability that is logically to be attributed to the negligence itself. It is simpler, and no doubt more accurate, to state the problem in terms of legal responsibility: is the defendant legally responsible to protect the plaintiff against such unforeseeable consequences of the defendant's own negligent acts?" W. Prosser W. Keeton, Torts (5th Ed. 1984) § 43, pp. 280-81. Although the parties have briefed and argued the issue of foreseeability as an independent causation issue, we believe that this issue relates more directly to a determination of whether liability should be imposed for unforeseeable consequences of a defendant's negligent conduct and is more appropriately resolved as a question of duty. . . . (Citation omitted.) Id., 575 n. 10.
In somewhat different contexts, the Supreme Court has, for policy reasons, limited the range of those from whom recovery is available inJaworski v. Kiernan, 241 Conn. 399 (1997) (athletic injuries). Petriellov. Kalman, 215 Conn. 377 (1990) (hospital's duty regarding informed consent) and Maloney v. Conroy., 208 Conn. 392 (1988) (bystander recovery in medical malpractice), to name a few. The Supreme Court used a similar analysis, from the starting point of causation rather than duty, in Doev. Manheimer, supra, 212 Conn. 748.[8]
In any event, it is clear that our Supreme Court has enunciated a strong and consistent policy of the common law that the universe of those responsible in a legal action is to be limited in some fashion. It is equally clear that the court has also stressed, on several occasions, that reference to the common law is a useful tool in resolving issues arising under the Water Pollution Control Act. Especially because there CT Page 14200 is apparently no limitation on the applicability of § 22a-451 by virtue of any scienter requirement[9], the meaning of "indirect cause" must be limited by notions of common law policy reasons. "Indirect" could mean limitless, in contradistinction to "direct", but it also could mean simply not the immediate (or direct) cause, which meaning would complement "direct."[10] I believe, in an effort to recognize a reasonably consistent body of law, that the more restrictive meaning of "indirect" is appropriate in the context of § 22a-451, and that some concept of remoteness limits its applicability.[11] A cause which is unreasonably remote, then, may not provide the basis for liability.
This does not mean that the word "indirect" is meaningless. A party other than the immediate and, in one sense, the "direct" cause — here, presumably the thief — may be found liable to reimburse the state. There simply must be, however, some standard of remoteness which limits application of § 22a-451 in a reasonable way. This somewhat restrictive interpretation of the word "indirect", applied on a case by case basis and in specific contexts, still allows reasonably. broad application in furtherance of the broad remedial legislative mandate, does not lead to absurd results, and is consistent with our deeply embedded principles of jurisprudence.
Turning to the facts as they apply to each defendant., I find that Xtra Lease has sustained its burden to show that there is no genuine issue of material fact and that judgment should enter in its favor. The only contribution made by Xtra Lease was its innocently leasing a trailer to Tri-Express, under circumstances such that no reasonable person would anticipate that pollutants would be abandoned in the trailer. In the circumstances of this case, "cause," even indirect, is not substantial enough to impose liability.[12]
Tri-Express, however, stands on a different footing. The materials submitted in connection with the motion for summary judgment do not establish that there are no genuine issues of fact, for at least two reasons. First, a genuine issue has been raised as to whether Tri-Express is liable even under traditional notions of negligence and proximate cause. Second, I do not find for policy reasons that a lessee, in the circumstances presented, is necessarily so far removed from the eventual harm that liability is foreclosed by policy considerations akin to duty and causation. After all, the legislature surely intended an expansive, albeit not limitless, meaning to be applied to the phrase "direct or indirect cause," and the act is to be interpreted in a broad maimer to effect its remedial purposes. Tri-Express' motion for summary judgment is denied.
Beach, J. CT Page 14201