MA'AYERGI AND ASSOCIATES, LLC, ET AL. *v.* PRO SEARCH, INC., ET AL.
(AC 29706)

Flynn, C. J., and Beach and Borden, Js.

 

Argued April 14—officially released July 14, 2009

*Allen A. Currier,* for the appellant (plaintiff Hamza Ma'Ayergi).

*Brenden P. Leydon,* for the appellees (defendants).

*Opinion*

FLYNN, C. J. The individual plaintiff Hamza Ma'Ayergi appeals from the judgment of the trial court dismissing his complaint against the defendants, Pro Search, Inc., and Robert N. Jaeger.[1] On appeal, the plaintiff claims that the court improperly dismissed his defamation claim after concluding that he lacked standing to sue in his individual capacity. We agree and, accordingly, reverse in part the judgment of the trial court.

The following facts, as alleged or necessarily implied from the complaint, are relevant to our resolution of the plaintiff's appeal. See *May* v. *Coffey,* 291 Conn. 106, 108, 967 A.2d 495 (2009) (in reviewing "the trial court's decision to grant a motion to dismiss, we take the facts to be those alleged in the complaint, including those

---

[1] The remaining plaintiffs, Ma'Ayergi & Associates, LLC (the plaintiff's law firm), and Pro Search of Connecticut, LLC (the plaintiff's company), are not parties to this appeal. We will refer to Hamza Ma'Ayergi as the plaintiff for purposes of this opinion.

facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader" [internal quotation marks omitted]). The defendant Pro Search, Inc., is a Connecticut corporation, and the defendant Jaeger is its president and sole shareholder. As of September, 2003, the plaintiff's law firm, Ma'Ayergi & Associates, LLC, conducted a title search business and an immigration law practice, employing twelve people. Jaeger was employed at First American Title Insurance Company as its vice president when he approached the plaintiff with a proposal for the plaintiff to expand his title search business. Jaeger proposed that he would use his existing business relationships to expand the plaintiff's title search business in return for a weekly stipend of $2000 and payment of his expenses. He also suggested that the plaintiff form a new company to assume the business being conducted by Jaeger's wholly owned corporation, Pro Search, Inc. Jaeger proposed that all funds from the plaintiff's prospective new company be deposited into Jaeger's account so that he could deduct his stipend and his expenses before remitting the balance to the plaintiff.

Jaeger and the plaintiff entered into an oral agreement for the benefit of the plaintiff, the plaintiff's law firm, the plaintiff's prospective new company and the defendants, in September, 2003. The defendants were to operate in an agency capacity for the plaintiff and the plaintiff's company. On October 3, 2003, the plaintiff established the new company, Pro Search of Connecticut, LLC, in accordance with the proposal and agreement of the parties, expecting to see substantial increases in the title abstract business because of Jaeger's connections. On a monthly basis from September, 2003, to September, 2006, the plaintiff, instead, saw a steady decrease in income from the title abstract business being conducted by Jaeger, who told the plaintiff on several occasions that certain title companies and

law firms were dissatisfied with the plaintiff's work. The plaintiff's receipts for abstract of title work went from $800,000 in 2003 to $150,000 in 2006.

The plaintiff subsequently learned that Jaeger was telling title companies and law firms that sending business to Jaeger's company, Pro Search, Inc., was the same as sending the business to the plaintiff's company, Pro Search of Connecticut, LLC, or to the plaintiff's law firm. Additionally, the plaintiff learned that Jaeger repeatedly told title companies and law firms that the plaintiff was incompetent, as were his employees, and that they were not qualified to conduct title abstract work in a proper manner. Many of the plaintiff's customers were redirected to Jaeger and Pro Search, Inc.

On the basis of these alleged facts, the plaintiffs brought an eleven count complaint against the defendants.[2] All of the counts were brought on behalf of the plaintiff, his law firm and his company, and all of the counts were brought against both defendants.

On September 20, 2007, the defendants filed a motion to dismiss the complaint in its entirety as to the plaintiff on the ground that he did not have standing to assert claims on his behalf for harm caused to a limited liability company. On December 11, 2007, the court granted the motion, specifically adopting the reasoning in the defendants' brief. After the plaintiffs filed a motion for clarification, the court clarified its judgment, on January 8, 2008, by stating: "The decision of December 11, 2007 stands. The matter was not properly [pleaded] regarding an individual's claim of defamation. Furthermore, a derivative claim of an individual must be properly [pleaded]." This appeal followed.

---

[2] The complaint alleged breach of contract, breach of fiduciary duty, misrepresentation or fraud (two counts), tortious interference with business expectancies, statutory theft, violation of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq.; defamation, unjust enrichment and conversion and sought an accounting.

On appeal, the plaintiff claims that the court improperly granted the motion to dismiss. Although he makes a general statement regarding the complaint in its entirety, his brief focuses on the court's dismissal of the defamation count of the complaint. This also was the focus of his oral argument before this court and of his arguments before the trial court. Insofar as the plaintiff makes an argument that he, individually, has standing to assert all of the causes of action on behalf of his companies because he is the sole member of those companies, we do not agree. Similar to Louis XIV's declaration, "Je suis l'etat,"[3] the plaintiff, in effect, argues that he is his company. However, "[a] corporation is a separate legal entity, separate and apart from its stockholders. . . . It is an elementary principle of corporate law that . . . corporate property is vested in the corporation and not in the owner of the corporate stock. . . . That principle also is applicable to limited liability companies and their members." (Citation omitted; internal quotation marks omitted.) *Litchfield Asset Management Corp.* v. *Howell*, 70 Conn. App. 133, 147, 799 A.2d 298, cert. denied, 261 Conn. 911, 806 A.2d 49 (2002). In this case, the companies were parties to the action at trial, and, as such, they have asserted their own interests in this lawsuit. Furthermore, the plaintiff admitted during oral argument that there is no difference in the harm alleged or suffered to either of the companies or to him except for that alleged in the defamation count. He also stated that, with the exception of the defamation count, it really made no difference that the claims he asserted individually were dismissed. Accordingly, we focus our analysis on the defamation count.

The plaintiff argues that he properly pleaded a claim of defamation on behalf of himself because, although he alleged injury to his law firm and to his company,

---

[3] "I am the state."

he also alleged that the defendants had told prospective clients that he was incompetent and that he could not properly perform abstract of title work. He further argues that the fact that he is the sole member of a limited liability company should not interfere with his right to bring a defamation claim against people or entities who specifically slandered him and ruined his individual professional reputation. We agree.

In reviewing the court's decision to grant a motion to dismiss, "we take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. . . . [A] motion to dismiss admits all facts well pleaded and invokes any record that accompanies the motion, including supporting affidavits that contain undisputed facts." (Citation omitted; internal quotation marks omitted.) *May* v. *Coffey*, supra, 291 Conn. 108.

"Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he [or she] has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. . . . When standing is put in issue, the question is whether the person whose standing is challenged is a proper party to request an adjudication of the issue . . . . Standing requires no more than a colorable claim of injury; a [party] ordinarily establishes . . . standing by allegations of injury. Similarly, standing exists to attempt to vindicate arguably protected interests. . . .

"The issue of standing implicates subject matter jurisdiction and is therefore a basis for granting a motion to dismiss. Practice Book § 10-31 (a). [I]t is the burden of the party who seeks the exercise of jurisdiction in his favor . . . clearly to allege facts demonstrating that

he is a proper party to invoke judicial resolution of the dispute. . . . Because a determination regarding the trial court's subject matter jurisdiction raises a question of law, our review is plenary." (Citation omitted; internal quotation marks omitted.) *May* v. *Coffey*, supra, 291 Conn. 112–13.

The plaintiff claims that the court improperly determined that he did not have standing to assert an individual cause of action for defamation against the defendants. He argues that he alleged, in part, that the defendants had attacked and challenged his individual reputation and competence and that this gives him standing in his individual capacity to assert such a cause of action. The defendants argue that the plaintiff cannot assert a claim, in his individual capacity, for an alleged wrong to a limited liability company because that would amount to a derivative action, which is improper under *May*. We disagree with the defendants and conclude that the plaintiff did plead damage to his individual professional reputation and that the law of derivative actions is not applicable to the plaintiff's individual claim of defamation.

We began our analysis by discussing the law of derivative actions and why it is inapplicable to the individual claim of defamation. "The derivative suit is an action brought on behalf of a corporation by some percentage of its shareholders. *Ross* v. *Bernhard*, 396 U.S. 531, 538, 90 S. Ct. 733, 24 L. Ed. 2d 729 (1970). [In many of these actions, the] corporation is in an anomalous position of being both a defendant and a plaintiff in the same action. This unusual posture for the corporation is the result of the historical evolution of the derivative suit. At common law, there was no action in law permitting a shareholder to call corporate managers to account. Id., 534. In equity, there were two actions that evolved into a single derivative action: in one action the corporation was named as a defendant in order to compel it

to take action against its controlling officers; in the second, the shareholder maintained an action against the officers and directors of the corporation, on behalf of the corporation. The dual actions were cumbersome and evolved into the present day unitary derivative action." *Rosenfield* v. *Metals Selling Corp.*, 229 Conn. 771, 790–91, 643 A.2d 1253 (1994). "A shareholder's derivative suit is an equitable action by the corporation as the real party in interest with a stockholder as a nominal plaintiff representing the corporation. . . . It is designed to facilitate holding wrongdoing directors and majority shareholders to account and also to enforce corporate claims against third persons." (Citations omitted.) *Barrett* v. *Southern Connecticut Gas Co.*, 172 Conn. 362, 370, 374 A.2d 1051 (1977).

"The use of a nominal plaintiff in a derivative action makes it an unusual procedural device by reason of its dual nature in that it consists of the basic cause of action, which pertains to the corporation and on which the corporation might have sued, and the derivative cause of action, based upon the fact that the corporation will not or cannot sue for its own protection. . . . Thus the dual nature of the stockholder's action: first, the plaintiff's right to sue on behalf of the corporation, and, second, the merits of the corporation's claim itself." (Citation omitted; internal quotation marks omitted.) Id.

A derivative action is one brought on behalf of a company, where the company cannot or will not sue on its behalf for its injuries. In the present case, the company was a party to the action, and each count of the complaint was brought by the company and the law firm. As far as the defamation count, which is the only count relevant to this appeal, it was brought by the company, the law firm and the plaintiff, in his individual capacity. This fact alone makes the case very different from cases such as *May*, in which the minority shareholders attempted to assert a claim against the majority shareholders on behalf of the corporation.

The defamation count in the present case alleges that Jaeger made repeated representations to business associates that "the plaintiff and his company's employees were incompetent and incapable of properly completing title abstracts . . . [and that he] sought to defame the plaintiffs in order to destroy his professional reputation and thereby divert his sources of business, and the revenue relative thereto, to himself and his company. . . . As a consequence thereof the plaintiffs have been damaged by loss of revenue estimated to exceed $1,000,000 for the period from September 2003 to the date of this complaint." Although the complaint may be inartfully drafted, and confusing in parts, taking the facts alleged in the defamation count, including those facts necessarily implied, and construing them in a manner most favorable to the plaintiff, we conclude that the plaintiff has alleged harm to his individual professional reputation in addition to the harm that the company or law firm may have alleged. The count, at least in part, alleges that the defendants, or more particularly, Jaeger, had publicly attacked the plaintiff's competence and ability to perform title abstracts in a proper manner. This alleged, at least in part, an injury that was personal to the plaintiff's individual reputation and, accordingly, could not be considered derivative. Although the count also alleges specific harm to the plaintiff's company or the plaintiff's law firm, that does not take away from the allegations that his personal professional reputation has been tarnished by the defendants' slanderous words.

The judgment is reversed in part and the case is remanded with direction to deny the defendants' motion to dismiss as to the plaintiff's defamation claim and for further proceedings according to law. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.