******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ALFRED J. KLOIBER ET AL. *v.* LINDA JELLEN ET AL.
(AC 43382)

Elgo, Cradle and DiPentima, Js.

*Syllabus*

The plaintiffs, K and M, sought an injunction and to recover damages from the defendants for trespass, private nuisance, common-law negligence and statutory negligence in connection with a property dispute between the parties concerning surface water runoff onto certain real property located directly between the parties' properties. F Co., a limited liability company of which K is the principal and sole member, holds title to the subject property, which is maintained as a rental property. The plaintiffs never owned, occupied or resided at, or had a possessory interest in, the subject property. Following a trial on the merits, the trial court rendered judgment in favor of the defendants, from which the plaintiffs appealed to this court. *Held* that the plaintiffs lacked standing to maintain this action in their individual capacities against the defendants and, as self-represented individuals, could not maintain it on behalf of F Co., and, therefore, the action should have been dismissed for lack of subject matter jurisdiction.

Argued May 17—officially released September 21, 2021

*Procedural History*

Action to recover damages for, inter alia, trespass, and for other relief, brought to the Superior Court in the judicial district of Danbury and tried to the court, *Krumeich, J.*; judgment for the defendants, from which the plaintiffs appealed to this court. *Improper form of judgment*; *reversed*; *judgment directed.*

*Melanie McNichol*, self-represented, with whom, on the brief, was *Alfred J. Kloiber*, self-represented, the appellants (plaintiffs).

*Robert O. Hickey*, with whom, on the brief, was *Ryan T. Daly*, for the appellees (defendants).

*Opinion*

ELGO, J. In this property dispute among neighbors, the self-represented plaintiffs, Alfred J. Kloiber and Melanie McNichol,[1] appeal from the judgment of the trial court in favor of the defendants, Chris Jellen and Linda Jellen. On appeal, the plaintiffs raise a variety of issues related to the court's disposition of their trespass, private nuisance, negligence, and statutory negligence claims. Following supplemental briefing by the parties on the issue of standing, we conclude that the plaintiffs lacked the requisite standing to maintain this action. Accordingly, we reverse the judgment of the trial court and remand the case with direction to render a judgment of dismissal.

The following facts are relevant to this appeal. As the court found in its memorandum of decision, "[t]he [three] properties in question are located in Sherman off Route 39 South between Wanzer Mountain and Squantz Pond." In 1988, the defendants purchased real property known as 158 Route 39 South (defendants' property),[2] on which they constructed a home.[3] Central to this dispute is the parcel known as 160 Route 39 South (subject property), which the court found was "downhill from and adjacent to [the westerly side of] the defendants' property . . . ."[4] Further west and adjacent to the other side of the subject property is 162 Route 39 South (plaintiffs' property), which the plaintiffs purchased in 1999. The subject property thus sits directly between the plaintiffs' property and the defendants' property.

Approximately twenty years after the defendants developed their property and more than a decade after the plaintiffs purchased their property, an entity known as "Fred's Country Rentals, LLC," acquired the subject property in December, 2010. It is undisputed that Kloiber is the principal and sole member of that limited liability company. It also is undisputed that the limited liability company holds title to the subject property. As the court found in its memorandum of decision, the subject property at all relevant times was maintained "as a rental property."[5] At no time did the plaintiffs occupy or reside at the subject property. Rather, the uncontroverted evidence presented at trial indicated that they resided at the plaintiffs' property at all relevant times.[6]

In December, 2017, the plaintiffs commenced this action for injunctive and monetary relief, which concerns surface water runoff onto the subject property. Their operative complaint contained four counts alleging trespass, private nuisance, negligence, and statutory negligence. As the court noted in its memorandum of decision, "[t]he only activity by the defendants that the plaintiffs point to as contributing to the migration of surface water onto the subject property concerns the

construction of the defendants' house . . . . The plaintiffs complain that the defendants developed a woodland lot by constructing a house with roofs, gutters, leaders and downspouts, a driveway and a parking area, which . . . added 'impervious surfaces' that the plaintiffs contend channeled surface water that eventually traveled to the subject property. The defendants also constructed a septic system that included a swale to divert groundwater away from the septic fields. . . . All the changes in surface conditions to the defendants' property were in accordance with the building plans approved by municipal authorities when their house was constructed and certificates of occupancy were issued." (Footnote omitted.)

Following a two day trial, the court issued a comprehensive memorandum of decision, in which it found that "[t]he surface water collected on Wanzer Mountain tends to migrate downhill across Route 39 onto the defendants' property . . . and from there through natural gullies, channels and rivulets to the subject property. . . . [T]hese natural channels were likely the result of long-standing natural water flow, not any activity to direct or increase the flow onto the subject property by the defendants. . . . [T]here is no evidence that the defendants directed or increased the natural flow onto the subject property. All the changes to the contours on the defendants' property and the structures and paved areas erected were in accordance with approvals received from municipal authorities when the defendants' house was constructed . . . and would have been known by the plaintiffs before the purchase of the subject property. . . . Nor is there proof the flooding and erosion experienced on the subject property was caused by any alterations to the defendants' property. . . .

"There was no evidence of the natural water flow before improvements to the defendants' property; it is probable that surface water flowed down the mountain and over the highway onto the defendants' property before it was improved and that excess water migrated downhill to the subject property. There is no evidence that the changes made to the defendants' property caused the conditions complained of by the plaintiffs." The court thus concluded that the plaintiffs could not prevail on any of their claims and rendered judgment in favor of the defendants.

From that judgment, the plaintiffs appealed. At oral argument before this court, McNichol, who was the only plaintiff presenting oral argument, was asked precisely who held title to the subject property.[7] Consistent with her testimony at trial,[8] McNichol responded that title to the subject property was held by "an LLC." Mindful that a question of subject matter jurisdiction may be raised at any time, including sua sponte invocation by a reviewing court; *DeCorso* v. *Calderaro*, 118 Conn.

App. 617, 623 n.11, 985 A.2d 349 (2009), cert. denied, 295 Conn. 919, 991 A.2d 564 (2010); see also *Smith* v. *Snyder*, 267 Conn. 456, 460 n.5, 839 A.2d 589 (2004) ("[w]e raise this issue of standing sua sponte as it implicates our subject matter jurisdiction"); we subsequently ordered the parties to file supplemental briefs on the issue of the plaintiffs' standing to maintain this action.

"Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he [or she] has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. . . . [If] a party is found to lack standing, the court is consequently without subject matter jurisdiction to determine the cause." (Citation omitted; internal quotation marks omitted.) *J.E. Robert Co.* v. *Signature Properties, LLC*, 309 Conn. 307, 318, 71 A.3d 492 (2013); see also *Ion Bank* v. *J.C.C. Custom Homes, LLC*, 189 Conn. App. 30, 42, 206 A.3d 208 (2019) ("the court lacks subject matter jurisdiction over an action commenced by a plaintiff without standing"). Because the issue of standing implicates a court's subject matter jurisdiction, it is subject to plenary review. *Channing Real Estate, LLC* v. *Gates*, 326 Conn. 123, 137, 161 A.3d 1227 (2017).

In their supplemental brief, the plaintiffs acknowledge that they neither own nor hold title to the subject property.[9] They nonetheless maintain that they possess standing to maintain the four causes of action alleged in their complaint. We disagree.

In count one, the plaintiffs alleged trespass against the defendants. By way of relief, they sought, inter alia, "[a]n immediate injunction requiring the defendants to cease and desist allowing the flow of their surface water runoff to enter over, under and onto" the subject property. As our Supreme Court has explained, "[t]itle is an essential element in a plaintiff's case, whe[n] an injunction is sought to restrain a trespass . . . ." (Internal quotation marks omitted.) *Socha* v. *Bordeau*, 277 Conn. 579, 586, 893 A.2d 422 (2006). When both monetary damages for trespass and an injunction are sought, as is the case here, "both title to and possession of the disputed area must be proved . . . and the burden of proving them is on the plaintiff." (Citations omitted.) *McCullough* v. *Waterfront Park Assn., Inc.*, 32 Conn. App. 746, 749, 630 A.2d 1372, cert. denied, 227 Conn. 933, 632 A.2d 707 (1993). Because the plaintiffs by their own admission do not hold title to the subject property, we conclude that they lack standing to maintain the trespass action alleged in their complaint. See *Ventres* v. *Farmington*, 192 Conn. 663, 668, 473 A.2d 1216 (1984) ("the trial court correctly found that the plaintiff had no standing to complain of trespass"); *Zanoni* v. *Hudon*, 42 Conn. App. 70, 75, 678 A.2d 12 (1996) (trial court "correctly concluded" that plaintiffs lacked standing to

bring trespass action).

The plaintiffs also alleged private nuisance on the part of the defendants. Under Connecticut law, such a claim may be brought only by an owner or occupier of the property in question. "A private nuisance exists only where one is injured in relation to a right which he enjoys by reason of his ownership of an interest in land. . . . [A cause of action for private nuisance] includes all injuries to an owner or occupier in the enjoyment of the property of which he is in possession, without regard to the quality of the tenure."[10] (Internal quotation marks omitted.) *Webel* v. *Yale University*, 125 Conn. 515, 525, 7 A.2d 215 (1939); see *Couture* v. *Board of Education*, 6 Conn. App. 309, 315, 505 A.2d 432 (1986) (plaintiff could not maintain private nuisance action "[b]ecause he suffered no injury in relation to his ownership of an interest in land"); *Welsh* v. *Nusbaum*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-17-6033010 (June 7, 2018) (66 Conn. L. Rptr. 574) (plaintiff's allegation that "she was a [long-term] occupant of the property" sufficient to survive motion to strike private nuisance claim); *Petrarca* v. *Doubleday*, Superior Court, judicial district of New London, Docket No. CV-09-5013111 (November 17, 2010) (50 Conn. L. Rptr. 886) (concluding that tenant's "claim sounding in private nuisance" against " 'owner/landlord' " of property was legally sufficient to survive motion to strike); *Arachy* v. *Schopen*, 22 Conn. Supp. 20, 20–21, 158 A.2d 604 (1960) (plaintiff could not maintain private nuisance action because "he was not injured in relation to a right which he enjoyed by reason of his ownership of an interest in land"); *Goldberg* v. *Wolotsky*, 8 Conn. Supp. 72, 73 (1940) (plaintiff could not maintain private nuisance action because he was not owner or occupier of property where injury occurred); see also *Adkins* v. *Thomas Solvent Co.*, 440 Mich. 293, 303, 487 N.W.2d 715 (1992) ("[t]he essence of private nuisance is the protection of a property owner's or occupier's reasonable comfort in occupation of the land in question"); *Philadelphia* v. *Brabender*, 201 Pa. 574, 576, 51 A. 374 (1902) ("only the owners or occupiers" can maintain private nuisance action); *Bowers* v. *Westvaco Corp.*, 244 Va. 139, 148, 419 S.E.2d 661 (1992) ("[a] private nuisance is the using, or authorizing the use of, one's property, or of anything under one's control, so as to injuriously affect an owner or occupier of property" (internal quotation marks omitted)); W. Keeton et al., Prosser and Keeton on the Law of Torts (5th Ed. 1984) § 87, p. 619 (private nuisances "interfere with [the] right to the undisturbed enjoyment of the premises which is inseparable from ownership of the property"); W. Keeton et al., supra, p. 622 ("[p]rivate nuisance is a tort that protects the interest of those who own or occupy land").

Here, the plaintiffs do not own the subject property. See footnote 9 of this opinion. It also is undisputed that the plaintiffs never occupied the property. See footnote

6 of this opinion. Accordingly, they lack standing to maintain a cause of action for private nuisance against the defendants.

Relying on § 821E of the Restatement (Second) of Torts, the plaintiffs nonetheless claim that they are entitled to maintain a private nuisance action due to their purported status as "possessors" of the subject property. That claim is unavailing. Titled "Who Can Recover For Private Nuisance," § 821E enumerates three classes of individuals "who have property rights and privileges in respect to the use and enjoyment of the land affected . . . (a) possessors of the land, (b) owners of easements and profits in the land, and (c) owners of nonpossessory estates in the land that are detrimentally affected by interference with its use and enjoyment." 4 Restatement (Second), Torts § 821E, pp. 102–103 (1979). The plaintiffs in this case do not qualify for any of those three classes.

As the commentary expressly states, the term "[p]ossessors of land," as used in § 821E, is defined in § 328E. Id., comment (c), p. 103. Section 328E, in turn, defines "possessor of land" as "(a) a person who is in occupation of the land with intent to control it or (b) a person who has been in occupation of land with intent to control it, if no other person has subsequently occupied it with intent to control it, or (c) a person who is entitled to immediate occupation of the land, if no other person is in possession under [c]lauses (a) and (b)." 2 Restatement (Second), Torts § 328E, p. 170 (1965). It is undisputed that the plaintiffs have never been in occupation of the subject property. See footnote 6 of this opinion. Furthermore, because they concededly are not the owners of the subject property, they are not "a person who is entitled to immediate occupation" of that property when it is unoccupied. The plaintiffs, therefore, are not possessors of the subject property, as that term is used in the Restatement (Second). See 4 Restatement (Second), supra, § 821E (a), p. 102. There also is no claim or evidence in this case that the plaintiffs are owners of easements and profits in the subject property. See id., § 821E (b), p. 102. Finally, in light of their concession that the subject property at all relevant times was owned by a limited liability company; see footnotes 8 and 9 of this opinion; the plaintiffs plainly are not owners of nonpossessory estates in the subject property. See id., § 821E (c), p. 103. They thus do not qualify as possessors of the subject property pursuant to the Restatement (Second).

Apart from the Restatement (Second) of Torts, the plaintiffs have provided no legal authority to support their claim of a possessory interest in the subject property. At trial, both plaintiffs equated ownership of real property with possession thereof and testified that they were in exclusive possession of the subject property due to their status as owners of the property,[11] which

testimony they now concede was incorrect. See footnote 9 of this opinion.

Although the plaintiffs testified that they paid the mortgage, property taxes, and utility bills for the subject property, they presented no documentary evidence of such payments, save for a redacted Form 1098 mortgage interest statement for 2018 addressed to Kloiber at "PO Box 8832 New Fairfield, CT 06812."[12] More importantly, they provided no evidence that such payments were made *in their individual capacities*, rather than on behalf of the limited liability company that owned the subject property. At all relevant times, Kloiber was the principal and sole member of that company. This court takes judicial notice of the records of the Connecticut Secretary of the State, which indicate that the business address of that limited liability company is "PO Box 8832 New Fairfield, CT 06812"—the same address contained on the mortgage interest statement admitted into evidence. See, e.g., *Nationstar Mortgage, LLC* v. *Server*, Superior Court, judicial district of New Haven at Meriden, Docket No. CV-17-6011564-S (September 13, 2018) (taking judicial notice of business address of limited liability company); *Dowling* v. *Schupp*, Superior Court, judicial district of Hartford, Docket No. CV-11-6027560 (July 28, 2015) (taking judicial notice of "the corporate records in the [S]ecretary of [the] [S]tate's office").

The plaintiffs have provided this court with no authority to support the contention that the payment of certain bills and expenses on behalf of a limited liability company by one of its members suffices to establish a possessory interest in real property owned by that company, particularly when the payor never occupied the property. See *DeNunzio* v. *DeNunzio*, 90 Conn. 342, 348, 97 A. 323 (1916) ("The plaintiff as an officer . . . never had possession of any of the assets of the corporation in his own right. His possession as an officer . . . was that of the corporation. As an individual he never had any corporate assets . . . and no right to the possession of any [corporate assets] . . . ."). In the present case, any interest the plaintiffs had in the subject property derived exclusively from their activities on behalf of the limited liability company in a representative capacity. In such circumstances, they cannot be said to have a possessory interest in the subject property. Accordingly, the plaintiffs lacked standing to maintain an action for private nuisance against the defendants.

For that same reason, the plaintiffs lacked standing to maintain their common-law and statutory negligence actions. Although the plaintiffs submit that "their claims were based solely on an invasion of their individual rights," they have not identified any rights that are distinct from, and not derivative of, those of the limited liability company that owned the subject property. Because the plaintiffs did not own, occupy, or have a

possessory interest in that property, any harm caused by the defendants' allegedly improper conduct was sustained by the limited liability company, as the owner of the subject property. See *Padawer* v. *Yur*, 142 Conn. App. 812, 818, 66 A.3d 931 (concluding that plaintiff lacked standing to bring action because, "[i]f the defendants' alleged breach caused any harm . . . it was to [the limited liability company], not to the plaintiff in his individual capacity"), cert. denied, 310 Conn. 927, 78 A.3d 145 (2013).

Tellingly, the plaintiffs, in their supplemental brief, assert that the defendants' actions interfered with "the right of full and unfettered use and enjoyment *of one's real property*." (Emphasis added.) Yet, the subject property indisputably does not belong to the plaintiffs—it is owned by a limited liability company. The self-represented plaintiffs are not entitled to bring this action in their individual capacities on behalf of that limited liability company, despite the fact that Kloiber was the sole member of that company.[13] See, e.g., *Channing Real Estate, LLC* v. *Gates*, 326 Conn. 123, 138, 161 A.3d 1227 (2017) ("[b]ecause a member of a limited liability company cannot recover for an injury allegedly suffered by the limited liability company, we conclude that the defendant lacks standing to pursue a claim" on its behalf); *O'Reilly* v. *Valletta*, 139 Conn. App. 208, 214–15, 55 A.3d 583 (2012) ("[a] member or manager . . . may not sue in an individual capacity to recover for an injury based on a wrong to the limited liability company"), cert. denied, 308 Conn. 914, 61 A.3d 1101 (2013); *Ma'Ayergi & Associates, LLC* v. *Pro Search, Inc.*, 115 Conn. App. 662, 666, 974 A.2d 724 (2009) (rejecting plaintiff's claim that he had "standing to assert all of the causes of action on behalf of his companies because he is the sole member of those companies").[14]

The plaintiffs also argue, in passing, that the defendants interfered with their rights as "neighbors" to the subject property. They have provided neither legal authority nor analysis to substantiate that bald assertion. "[Our Supreme Court] repeatedly [has] stated that [w]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Internal quotation marks omitted.) *Taylor* v. *Mucci*, 288 Conn. 379, 383 n.4, 952 A.2d 776 (2008); see also *Northeast Ct. Economic Alliance, Inc.* v. *ATC Partnership*, 272 Conn. 14, 51 n.23, 861 A.2d 473 (2004) ("[i]nasmuch as the plaintiffs' briefing of the . . . issue constitutes an abstract assertion completely devoid of citation to legal authority or the appropriate standard of review, we exercise our discretion to decline to review this claim as inadequately briefed"); *Russell* v. *Russell*, 91 Conn. App. 619, 635, 882 A.2d 98 (parties must analyze relation-

ship between facts of case and applicable law), cert. denied, 276 Conn. 924, 888 A.2d 92 (2005), and cert. denied, 276 Conn. 925, 888 A.2d 92 (2005). We therefore decline to review that abstract assertion.

In light of the foregoing, we conclude that the plaintiffs lacked standing to maintain this action in their individual capacities against the defendants, which necessitates a dismissal of the action. We further conclude that, as self-represented individuals, the plaintiffs cannot maintain this action on behalf of the limited liability corporation that owned the subject property at all relevant times.

The form of the judgment is improper, the judgment is reversed and the case is remanded with direction to dismiss the plaintiffs' action for lack of subject matter jurisdiction.

In this opinion the other judges concurred.

[1] In this opinion, we refer to Alfred J. Kloiber and Melanie McNichol collectively as the plaintiffs and individually by name.

[2] At trial, Chris Jellen described the topography of the area in question as a "steady . . . downhill" from the top of Wanzer Mountain to Route 39 South and the defendants' property.

[3] As the court noted in its memorandum of decision, "[t]he parties stipulated [that] the defendants' property was woodland in December, 1988, when the defendants purchased it, and the [defendants'] house, driveway and septic fields were constructed in 1990."

[4] McNichol testified at trial that the defendants' property "sits uphill directly east" of the subject property.

[5] In their operative complaint, the plaintiffs alleged that the subject property was purchased "to rent out for current income and as an investment for long-term capital appreciation." On direct examination, Kloiber was asked, "what specific damages have . . . you incurred?" Kloiber answered that "[t]he damages include, but are not limited to loss of rent . . . ." McNichol similarly testified that the defendants' alleged conduct caused a loss of rental income from the subject property.

[6] At trial, Kloiber testified repeatedly that the plaintiffs "never lived" at the subject property. He further testified that they had occupied the plaintiffs' property at all relevant times. In their supplemental brief, the plaintiffs note their status as "neighbors" to the subject property.

[7] Although the plaintiffs offered into evidence a copy of the deed to the defendants' property, they did not submit a copy of the deed to the subject property at trial.

[8] At trial, the following colloquy occurred:

"[The Defendants' Counsel]: Ms. McNichol, who owns or who holds title to the subject property?

"[McNichol]: It's under Fred's Country Rentals, and it's part of our marital estate.

"[The Defendants' Counsel]: So, the—the title ownership is in—

"[McNichol]: My husband and it's part of the marital estate.

"The Court: I'm sorry. So, the title is under Fred—

"[McNichol]: Fred's Country Rentals.

"The Court: Fred's Country Rentals. That's an LLC or corporation?

"[McNichol]: It's an LLC, Your Honor.

"The Court: Okay. And—

"[McNichol]: Under my husband's name and—

"The Court: And, what do you mean by under your husband's name?

"[McNichol]: So, it—

"The Court: He owns Fred's Countr[y] Rentals?

"[McNichol]: Right, so [Kloiber is] the principal of Fred's Country Rentals and it's part of our marital estate.

"The Court: Okay. And, by marital estate you mean you have some interest because you're married to the person who owns the LLC?

"[McNichol]: Yes.

"The Court: Okay. So, all right. Are there any other owners of the LLC?

"[McNichol]: No, Your Honor.

"The Court: So, just [Kloiber]?

"[McNichol]: Yes, Your Honor. . . .

"The Court: All right. So [Kloiber is] the sole owner of the LLC?

"[McNichol]: Yes."

[9] In their supplemental brief, the plaintiffs concede that the subject property "is titled to and owned by an LLC" and that "there is no question as to the [subject] property's ownership by an LLC . . . ."

[10] The plaintiffs acknowledge that well established precept, which they quote in their supplemental brief.

[11] On direct examination, McNichol, acting in a self-represented capacity, asked Kloiber: "[Y]ou still remain in possession of the [subject] property, correct? You still own the property at this time?" Kloiber answered, "Yes, my wife and I both own the property." In her testimony, McNichol similarly testified that "[Kloiber] and I are the only owners of the property. We hold the sole title, and we remain in exclusive possession of the property."

[12] That document, which the plaintiffs introduced into evidence at trial, does not disclose the name of the account holder.

[13] Because the plaintiffs have appeared in a self-represented capacity, they cannot represent the limited liability company in this action. "Any person who is not an attorney is prohibited from practicing law, except that any person may practice law, or plead in any court of this state in his own cause. General Statutes § 51-88 (d) (2). The authorization to appear [in a self-represented capacity] is limited to representing one's own cause, and does not permit [self-represented] individuals to appear . . . in a representative capacity. In Connecticut, a corporation may not appear [in a self-represented capacity]. . . . A corporation may not appear by an officer of the corporation who is not an attorney." (Internal quotation marks omitted.) *Certo* v. *Fink*, 140 Conn. App. 740, 747 n.4, 60 A.3d 372 (2013).

[14] We further note that the present case does not fall within the "narrowly tailored exception" articulated in *Saunders* v. *Briner*, 334 Conn. 135, 174, 221 A.3d 1 (2019), which our Supreme Court explained is applicable "only in rare circumstances"; id., 174 n.39; nor have the plaintiffs so alleged. This case does not involve a sole plaintiff seeking recovery for "capital [that] belonged to him personally." Id. Here, there are two plaintiffs who claim an equal interest in the subject property and who submit that they "have standing as individuals . . . ." This case also does not involve an attempt to recover capital assets of the limited liability company, nor does it involve breach of fiduciary duty, breach of contract, breach of an implied covenant of good faith and fair dealing, or unfair trade practices claims. Rather, the present case involves a dispute regarding water runoff from a neighboring property, for which the plaintiffs seek injunctive and monetary relief.